Good morning, everyone. Please be seated. Judges Thomas, Fress, and I welcome you to the Ninth Circuit. We'll go through the calendar in the order that the cases are listed. The first three have been submitted on the briefs and record. Guerrero v. Bondi, Ley v. Huynh, Covello v. City of Belmont, actually four. Eden v. Bisignano have all been submitted. So the first case up for argument is Young v. Solana Labs, Inc. May it please the Court, Samir Deghasan for defendants. I'd like to reserve two minutes of my time for rebuttal. All right. I'll try to help you out, but keep your eye on the clock, too, please. Thank you, Your Honor. May it please the Court, the arbitration agreement at issue in this case is governed by the delegation provision in the JAMS rules. This Court held in Patrick that, quote, incorporation of the JAMS arbitration rules by reference constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability. And the JAMS rules even have a provision that specifically contemplates non-signatory enforcement by delegating to the arbitrator the determination of, quote, who are the proper parties to the arbitration. That is the exact question that's at issue in this case, and it's for the arbitrator to decide. The district court held otherwise based on language outside the delegation clause that purportedly limited the arbitration clause to the signatory parties. But the question of who the proper parties are is the very question that has been delegated to the arbitrator. As Judge Thapar put it in Blanton, it's like saying, quote, the arbitrator shall have the power to determine the scope of the agreement only as to claims that fall within the scope of the agreement. There's no case in the Ninth Circuit addressing non-signatories, though, correct? There is the PGE case, Your Honor, and the PGE case was a non-signatory. That was an attempt by the sureties in that case who were not signatories to the arbitration agreement to invoke it against PGE. And this Court said that that is a question of the ICC rules, which are, you know, very similar to the JAMS rules, actually don't have the who the proper parties are language. That's quite unique to the JAMS rules. But even under the ICC rules, this Court said that's a question of scope and enforceability that's properly delegated to the arbitrator. What about Kramer? So Kramer, that was not a JAMS rules case. And so I think the thing about Kramer was you have a delegation clause there that was textually tied to the scope of the arbitration clause. So the arbitration clause there was this. Either you or we may choose to have any dispute between you and us decided by arbitration. So that's very limited to the parties in at least two distinct ways. First, only either you or we may choose to have the dispute. So the trigger is one of the two parties is the only parties that can actually even trigger an arbitration. And secondly, it limits the dispute to any dispute between you and us decided by arbitration. So it's a very narrow arbitration clause. But then the critical point is the delegation clause there said this. This arbitration clause applies to any claim or dispute about the interpretation and scope of this arbitration clause. So the delegation clause incorporates the narrow arbitration clause. The narrow arbitration clause is only between the parties. So, you know, all Kramer was really doing is answering the question of is this clear and unmistakable, is this delegation clause clear and unmistakable  Right, but it has the you and us, we language. It's very similar to this case. Sure. But it's answering the question, is there clear and unmistakable evidence of an intent to delegate. That's the question that this Court already answered with respect to the JAMS rules with Patrick. And, of course, the JAMS rules has this additional thing of who the proper parties are. And none of that was an issue in Kramer. Kramer wasn't a JAMS rules case. And I actually think Kramer is a very straightforward and completely correct case on its facts. If you look at that delegation clause, this arbitration clause applies to any claim or dispute about the interpretation of this arbitration clause. That's clearly saying that whatever the scope of the arbitration clause is, it's the same as the scope of the deliberation clause. The arbitration clause applies to arbitrability disputes. Sure. And then you look to the arbitration clause. That is very clearly limited to disputes between the parties. Here, even the arbitration clause is not limited to disputes between the parties. It's much broader. It says you, this is at section 10.1 at 2ER210, you agree that any dispute or claim relating in any way to your access or use of the site services or software or any aspect of your relationship with Exodus be resolved by binding arbitration. So it's a much broader arbitration clause. But I don't think that even really matters. I think the important thing is the delegation clause here is the JAMS rules that this Court has already held. The JAMS rules are clear and unmistakable evidence of an intense delegate arbitrability. And I don't really understand on plaintiff's theory even what that who the proper parties are language could possibly mean, because I do think this is the classic secular reasoning that Judge Thapar was talking about. As I understand their argument, it is you have to look to the rest of the contract and figure out if the proper parties to the arbitration are the just the signatories or if they are, in fact, include non-signatories. And if you determine that it includes non-signatories, then the delegation clause applies. But then what is the meaning of the who the proper parties are language in the delegation clause? The whole point of the JAMS rules and a lot of these arbitral rules is they're a reaction to the Supreme Court's decision in first options that said you need to find clear and unmistakable evidence. So these rules are drafted in such a way to create clear and unmistakable evidence. And this Court and every circuit that's considered it has said when a contract incorporates rules like this, you incorporate the delegation provision as well. And that constitutes the clear and the requisite clear and unmistakable evidence. Cramer didn't have any of that, because it didn't have the incorporation of these rules. So Cramer was just looking at a completely different thing. Sotomayor So what are the limits of your argument? Any time that the JAMS rules are incorporated, any non-signatory can then come in and say and invoke the delegation clause? Regardless of whether there's any agency relationship, whether it's a successor interest, anybody can come in and say, okay, now this case goes to arbitration. Newman No, no. They would have to have an equitable estoppel argument. I mean, we have an equitable estoppel argument here. And the question is who decides that. And so the arbitrator is the one that has to decide that. Of course, the arbitrator can decide, you know, you don't have a very good equitable estoppel argument and send us back to court. That's a completely valid thing that could happen. But, right, it has to be someone who has to. Sotomayor But the threshold issue, you basically get to the arbitrator to decide all those questions. That's your theory. Newman You just get to the arbitrator to decide the threshold question. But, you know, the arbitrator is able to kick us back into court, and then we have to litigate the dispute in court. But arbitrability is decided by the arbitrator under the delegation clause. And, you know, the other side sort of suggests that, oh, there's going to be all these wild, crazy invocations of the delegation clause. You know, that is exactly the same argument that the Supreme Court addressed in Henry Schein. You know, if you listen to the oral argument there, you know, the suggestion was, you know, Justice Breyer asked the question, well, you know, if you're right, doesn't that mean that, you know, if you have an agreement with Walmart or some consumer, you know, they can just pail you into court and say, we want you to decide the question of the annexation of Crimea. And the Supreme Court's opinion says, you know, arbitrators can efficiently dispose of frivolous cases by quickly ruling that a claim is not, in fact, arbitrable. And arbitrators impose heavy sanctions, and, you know, as the Supreme Court pointed out, any of the circuits that have had the, you know, the rule that there was no wholly groundless exception, there was never a problem. And the same thing is true here. There are four circuits that have the exact rule that we're suggesting. There has never been all these crazy, wild invocations of the arbitration clause, because obviously a party that does that and has a frivolous claim is going to get sanctioned heavily, and there's no incentive to do that. No one wants to go on a detour to arbitration where they're guaranteed to lose and get sanctioned. So they're only going to do it in situations where they have a realistic and viable claim under whether it's equitable estoppel or agency, whatever it may be. And that is the sensible rule that's been administered in four circuits. And I do think there's no way around the fact this Court would be creating a circuit conflict with those four circuits if it adopts the rule that plaintiffs suggest, which is that this is an issue of formation, that, in fact, the arbitrator doesn't get to decide. And I think that would be the exact circular reasoning that Judge Thapar referred to. And just on that quick question on formation, as I mentioned it, because that is one of their lead arguments, you know, this is not the real — the straightforward reason why this is not a formation issue is because there is a contract here. You know, you have a situation where, you know, if you bracket the formation dispute in this case, you know, a plaintiff has signed the agreement, and the question is, what is the scope of that agreement? Who can enforce it? How far does it extend? And as the Supreme Court itself put it with respect to equitable estoppel, it described that as a background principle of State contract law regarding the scope of agreements, including the question of who may be bound by them. I think — Sotomayor, you wanted to save a little bit of time. Thank you, Your Honor. Good morning, Your Honors. And to please the Court, this is Matthew S. Weiler on behalf of Young. There are two independent bases to affirm the district court with respect to the delegation ruling. And the first basis is within the context in the straightforward text of the terms of service. The terms of service here explicitly and consistently define the parties as Young and Exodus. And that's from the outset of the agreement all the way through, the parties are defined consistently. The authority of the arbitrator is limited in Section 10.3, and I'll get to that in a minute. But the second reason to affirm the district court ruling is if there's ambiguity at all, if there are — if there is a conflict between what the JAMS rules would say on the one hand and what the contract explicitly says on the other hand, at minimum, there can be no clear and unmistakable delegation under Kramer. And so the Court can affirm on that basis alone. But sticking within — Well, counsel is saying Kramer is not an incorporation of JAMS rule case, so that's limited to those facts. How do you respond to that? I would say that Kramer sets the background rule here, sets the clear and unmistakable standard. That applies whether there's JAMS rules or not. You know, the JAMS rules here are defeated by the plain terms of the agreement, and that's what I want to get into right now. Because the district court, in noting that the agreement repeatedly describes the arbitration agreement as requiring arbitration of disputes between you and Exodus, invokes the same rules that are in Kramer, but the agreement here goes even further. And I want to show you how. So in the very same section of the delegation clause, which is section 10.3 of the terms of service, there's a provision there that says, quote, the arbitration proceeding will not be consolidated with any other matters or joined with any other cases or parties. That's 10.3. This limits the ability of the arbitrator to join third parties such as Solana. As the Exodus terms of service defines the parties to the agreement as between Young and Exodus, the arbitrator therefore lacks any authority to perform the very estoppel analysis that Solana seeks to perform here. And how do we know that the parties are narrowed? Well, beyond the consistent use of you and Exodus, there's a couple of terms that I want to point out to the Court. And one of those is section 11.5, the exclusive venue section there. The parties are explicitly referred to as Exodus and Young. What Exodus and Young can do. That is another indication and iteration of this U.N.S. language. It's found also in the waiver of the class action provision. It refers to waiver only as to Exodus because there is no other party contemplated in the agreement. Even on your view of the law, do you agree there's some kind of disagreement among the circuits at this point? I don't think so. I think the disagreement, Judge Rest, comes with respect to the different agreements that the circuits are analyzing. And I think that all of the circuits have the same standard, clear and unmistakable, that is the standard to show that the issue has been delegated. It has to be clear and unmistakable. That language appears in the Sixth Circuit cases as well. But what's lacking in those cases, in the Sixth Circuit cases, is the explicit limitation on the power of the arbitrator found in section 10.3 of this agreement, which is the very delegation clause. There's another provision in 10.3. It says right after it gets done saying that issues of scope and arbitrability as between Young and Exodus have to be decided by the arbitrator, the provision says, and I quote, This arbitration will decide the rights and liabilities, if any, of you and Exodus, period, end, stop. This is another important qualification that comes just after the delegation of arbitrability. The terms of the jams rules that Solano cites in its brief and discussed today are contradicted by these plain terms of the Exodus agreement. And here I want to get to a point that counsel made about the district court going outside of the delegation clause to find indicia that the agreement was limited. The district court did no such thing. The limitations on the authority of the arbitrator are found in section 10.3. That's inside the delegation clause. That is in the section of the terms of service defined as authority of the arbitrator. Those are explicit limits. And that, I think, explains factually the difference between what the Sixth Circuit may have done and what other circuits may have done. But there's another point that I want to make about the jams rules. So the jams rules cannot supplant the plain terms of the arbitration agreement. This is true as a matter of contract interpretation. The specified terms should trump the unspecified terms. And jams' own conflict rules, Rule 4 of jams, is no different, and it confirms that the application of the rules must yield to the terms of a contract. Rule 4 says, if any of these rules or modification of these rules agreed to by the parties is determined to be in conflict with a provision of applicable law, the provision of law will govern over the ruling conflict and no other rule will be affected. Now, in matters of contract interpretation, there is no greater legal authority than the contract itself. Is this now in tension with Patrick, this point you're making? Is it in tension with Patrick? I don't think that it is because, again, in Patrick, there was no contraindication within the authority provided to the arbitrator, as there is here. In Patrick, you had an invocation of jams rules, but you did not have the explicit limits on scope, the explicit limits on the ability of the arbitrator to bring another party into the arbitration that you have here. So I don't think it's in conflict at all. The cases relied on by Solano have very different --- When you're new, Patrick is just limited to the parties. It doesn't address non-signatories. Right. That's right. So you don't have this non-signatory issue in Patrick. So, again, the second independent basis to come back to here is that under the clear and unmistakable standard, the existence of ambiguity defeats delegation. So even if the Court were to consider what is in the jams rules, that would be – that would create an ambiguity. That would create a conflict between the potentially applicable jams rules, which, in my opinion, are not applicable by jam – by the very terms of jams rules itself. It would create a contradiction between the jams rules and the plain terms of the contract. That's an ambiguity. That has to be resolved in favor of – that has to be resolved in favor of delegation to – away from delegation in favor of determining the issues by the Court. So there is not a case that Solano has cited in his papers that uses the same explicit – has the same explicit limits of authority found in Section 10.3 of the Exodus Terms of Service. The Sixth Circuit and the Second Circuit cases all have – all lack that explicit limit, and most of them lack the consistent you and us formulation. And I want to go back and emphasize that as in Kramer and as the District Court pointed out here, that you and us language is very important because it's consistently limiting the scope of the parties to the agreement, and it appears consistently throughout the agreement. And with the rest of my time here, I think I'd like to point out to the Court that the issue of estoppel, I think, has been clarified by the California Supreme Court in the Ford case, and it's very clear now under Ford that you have to have, in order to enforce third-party agreement, that the plaintiff has to be seeking to enforce the terms or has to be seeking to enforce rights under that agreement. And this is at a section of Ford at 17 Cal 5th, 1130 to 1131. Plaintiffs' causes of action allegedly – alleging warranty violations and fraud do not seek to enforce any contractual provision. As a result, they should not be estopped from pursuing their claims in this court and in parentheses. That, I think, disposes of any of the arguments that Solano raises in the brief. Their arguments are relying on the loose logical relationship between Plaintiff Young's relationship with Exodus on the one hand and elements, certain elements of the claims on the other hand. But that's not enough under Ford. And it's not enough under Gonzalez either, the 2024 Cal App case that is discussed in Solano's reply brief. Same standard there. I think my time's up. Thank you, counsel. Thank you, Your Honor. Just a couple of quick points. So I guess I'm just not seeing what the inconsistency is in the provisions that were cited. So he relied heavily, plaintiff relied heavily on section 10.3, which says that you can't join or consolidate the proceeding. We're not suggesting that this proceeding be joined or consolidated if this arbitration would just be between, in this case, Solano and the plaintiff. So we're not talking about joined or consolidations. I don't think that suggests anything, really, with respect to this case. And then the other provisions are things that say the arbitrator, the word of the arbitrator is final and binding upon you and us, or that you, the arbitrator would decide the rights of you and Exodus. That's absolutely true. In an arbitration between you and Exodus, the arbitrator will decide those things. And there's nothing inconsistent about the arbitration provision referring to the thing that is going to be happening in 99.9 percent of times. I mean, 99.9 percent of times, you're going to have an arbitration between, you know, Exodus and the party signing the contract. That's fine. And so most of the provisions describe that situation. But nothing in this language says that the delegation clause or even the arbitration clause is limited to disputes between the parties. And just to give you two examples that I think, you know, were different, you know, the Eighth Circuit's decision in Burnett, for example, that had the phrase, the arbitration should be administered pursuant to the AAA rules only when the dispute or claim is between the parties. Now, yeah, that language, absolutely, that's a limitation on the delegation clause. Or Judge Tapar and Blanton used this example. The arbitration bracket except as to antitrust claims against non-signatories will be conducted in accordance with the AAA rules. You absolutely can have some limitation on the scope of the delegation clause. But there's no limitation like that here at all. The delegation clause stands apart. They don't – it's not limited in any way. The arbitration clause itself is broad. And the only thing they point to is general language that says the arbitrator will decide disputes between you and us. Absolutely, the arbitrator will decide disputes between you and us. That doesn't mean that's the only thing that the arbitrator can decide or that it doesn't mean that it negates the force of the JAMS rules. And the final thing I'll say is that, you know, I don't see anything that we heard is consistent with PGE. If you listen to the oral argument at PGE, you know, they said the exact same things about how we didn't agree to arbitrate with this particular entity. And if you look at ER332 of that case and the arbitration clause, it had the phrase disputes between the parties. That was the limitation on the arbitration clause. And it had all kinds of you-and-us language that's exactly the same as here. And what this Court said is that's all stuff you can say to the arbitrator. All right. Thank you, counsel, for your argument. Thank you to both sides. The matter is submitted.
judges: THOMAS, NGUYEN, BRESS